(Decided 18th June, 1890.)

HENRY H. KEEDY, Administrator c. t. a. of JOHN H. MOATS *vs.* WILLIAM E. MOATS.

*Single bill—Non est factum—Execution and Delivery—Fraud —Evidence.*

Where *non est factum* is pleaded to an action on a single bill, its mere possession by the obligee, upon the proof simply of the

Keedy, Adm'r *vs.* Moats.

signature of the obligor, is not *prima facie* that it was sealed by the obligor.

Where in an action on a single bill it is pleaded that the same was procured by the fraud of the plaintiff, evidence tending to show that the obligor, at the date of the instrument, was not in need of money, and had no occasion to borrow money, but that he had money to lend, and that the plaintiff was poor and without money to lend, and that he had repeatedly declared that the obligor was not indebted to him on any note, and that when requested to produce the note declined, saying that he did not hold any such note, should be submitted to the jury for their consideration on the issue as made by the pleading.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*Henry H. Keedy,* for the appellant.

*\*Buchanan Schley,* and *Hy. Kyd Douglas,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This was an action brought by the appellee on a single bill or bill obligatory against John H. Moats, who died soon thereafter, and the appellant, becoming administrator with the will annexed, was made party defendant.

The note or single bill bears date the 24th of February, 1885, and is for $950, payable one day after date. The case was tried upon issues joined upon pleas of *non est factum,* and that the note was procured by the fraud of the plaintiff.

* Did not participate in the argument, although present.

Keedy, Adm'r *vs.* Moats.

At the trial it was admitted that the whole of the instrument sued on, except the signature thereto, is in the hand-writing of the plaintiff.    There was, no evidence given to show that any transactions had taken place between the parties that would likely have given rise to an occasion for passing the note from John H. Moats, the testator, to the plaintiff.    In other words, the circumstances under which the note was executed by the testator and delivered to the plaintiff remain wholly undisclosed.    There was evidence given on the part of the defendant tending to prove that John H. Moats, the testator, was not, at the date of the note, in need of money, and had no occasion for borrowing money, but that he had money to loan ; that he was old and in feeble health, being in his 78th year of age when he died in August, 1889 ; that from the beginning of the year 1884 he was unable to attend to business, and that his son Joseph attended to all his business matters for him ; that during the months of January, February, and the early part of March, 1885, he was sick and confined to his bed, and that the plaintiff did not visit him during his sickness.    The proof on the part of the defendant further tended to show that the plaintiff was poor and without money to loan ; that he was carrying on a very small business, and that he had repeatedly declared, since the date of the note in question, that John H. Moats, the testator, was not indebted to him on any note, and when requested to produce the note to the sons of the testator, he declined, saying that he did not hold any such note.    There was other evidence of the same nature.

At the conclusion of the evidence the Court, at the request of the plaintiff, instructed the jury as follows:

1. " That the possession of the single bill in suit by the plaintiff is *prima facie* evidence of the *sealing* and delivery of the same by the deceased to the plaintiff,

provided the jury find that the single bill was subscribed with the signature of the defendant's testator, in his own proper hand-writing.

2. "That if the jury should find the execution and delivery of the single bill in suit by the defendant's testator, then the plaintiff is entitled to recover, notwithstanding the evidence offered by the defendant, tending to show that the deceased was not in need of money at the time the note was given, and the plaintiff had not the money to lend.

3. "That it is not competent to the defendant to impeach or question the consideration of the note sued on, and the only matter for the jury to consider under the pleadings is whether the deceased executed and delivered the note as claimed by the plaintiff; and if the jury find such execution and delivery, the plaintiff is entitled to recover, unless the jury further find that the note sued on was procured by the fraud of the plaintiff; and the jury is further instructed that there is no legally sufficient evidence for the jury in this case from which they may find that the said single bill was procured by the fraud of the plaintiff."

It was to the giving of these instructions by the Court that the defendant excepted; and the question is whether, under the pleadings and evidence, the jury were properly instructed, in accordance with the well settled principles of law applicable to such cases.

The general issue plea of *non est factum*, denying as it does the allegation in the declaration that the single bill sued on was the deed of the defendant's testator, threw the whole burden of proof upon the plaintiff, of the execution of the single bill, including the delivery thereof by the obligor. *Union Bank of Maryland vs. Ridgely*, 1 *H. & G.*, 416. The execution of the deed, to make it effective, consists of the signing and sealing thereof, followed by the act or ceremony of delivery.

But proof of *execution* and *possession* is sufficient evidence, *prima facie*, of *delivery*, and in the absence of all proof on the part of the defendant, would entitle the plaintiff to a verdict. *Edelin vs. Sanders, Exc'r*, 8 *Md.*, 118, 130. Mere proof of possession, however, in no manner relieves the plaintiff of the burden of proving the execution of the instrument as the deed of the obligor, that is, that the instrument was duly signed and sealed by or for him; for the mere possession of the instrument has no evidential relation to the existence of the seal. And upon such proof being given on the part of the plaintiff, the defendant, on the issue of *non est factum*, is entitled to give in evidence anything which goes to show that the instrument of writing was originally void at common law, as that it is a forgery; that the apparent obligor was a lunatic; that the instrument was obtained by fraud, and without any real assent of the mind, as where it was falsely read to a person blind or unable to read; or where a different instrument was substituted for that which the apparent obligor supposed he was executing, &c.; or anything that shows that the instrument had become void by matter subsequent to the execution and before pleading, as by erasure, alteration, &c., for the plea, being in the present tense, puts in issue not only the execution and delivery, but the continued existence of the deed, to the time of pleading. *Union Bank of Maryland vs. Ridgely, supra.*

The first instruction given was erroneous and calculated to mislead the jury, because, by it, the jury were told that the mere possession of the alleged single bill by the plaintiff was *prima facie* evidence, not only of the delivery, but also of the sealing of the note, if they believed the signature thereto was in the hand-writing of the defendant's testator. The existence of the seal of the party to be charged, the thing that makes the instrument a deed as distinguished from a promissory note,

was the substantial matter put in issue by the plea; and the mere possession by the plaintiff, upon the proof simply of the signature, did not prove the essential act of sealing the instrument; and especially not where it is admitted that the whole instrument is in the handwriting of the plaintiff, except only the signature thereto,—the seal being no part of the subscribed name of the party. The jury should have been left to find, from all the facts and circumstances of the case, whether the note sued on had been duly executed as a deed, by signature and seal of the defendant's testator. For though the scroll may have been made or fixed to the note by the plaintiff, if the maker of the note subscribed his name opposite the scroll thus made, he thereby adopted the scroll as his own seal, as completely as if he had made it himself.

This first instruction would seem to have been copied from the fifth prayer of the plaintiff in *Edelin vs. Sanders, Exec'r,* and which the Court of Appeals said ought to have been granted. But the terms of the prayer do not appear to have been critically examined either by Court or counsel ; and if construed literally it could hardly be made consistent with the principle expressly enunciated by the Court in that case, and which is clearly stated in the head-note of the case thus: '' The general plea of *non est factum* imposes on the plaintiff the onus of proving both the execution and delivery of the bond; and proof of *execution* and possession is *prima facie* evidence of *delivery,* and in the absence of all proof on the other side will entitle the obligee to a verdict.''

The second and third instructions are also erroneous, because they excluded from the consideration of the jury all the circumstances given in evidence to reflect upon the question of fraud raised by the pleadings. Whether the facts given in evidence on the part of the defendent were sufficiently strong to outweigh all the evidence for

the plaintiff is not the question; but whether, assuming the truth of all such evidence on the part of the defendant, the jury would have been justified, upon rational grounds, in finding a verdict for the defendant, is the proposition presented. And this Court is of opinion, that the facts and circumstances set out in the exception should have been submitted to the jury for their consideration, on the issues made by the pleading, and that it was error to instruct them that there was no evidence legally sufficient from which they could find that the single bill sued on had been procured by the fraud of the plaintiff. *Sides vs. Schnebly*, 3 *H. & McH.*, 243; *Edelin vs. Sanders, Exec'r*, 8 *Md.*, 118, 131. We must therefore reverse the judgment, and direct a new trial.

*Judgment reversed, and*
*new trial awarded.*

(Decided 18th June, 1890.)