512 A.2d 1044

**Barbara L. WARFIELD**

v.

**BALTIMORE GAS AND ELECTRIC COMPANY.**

**No. 148, Sept. Term, 1985.**

Court of Appeals of Maryland.

July 28, 1986.

Brian G. West, White, Page & Lentz, Towson, for appellant.

Ronald D. Byrd, Baltimore, for appellee.

Before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

SMITH, Judge.

We shall hold in this case that the inclusion of the word "seal" in a pre-printed form executed by an individual is sufficient to make the instrument one under seal.

In 1979 appellant, Barbara L. Warfield, executed a guaranty to appellee, Baltimore Gas & Electric Company (BG & E). It was on a regular form of the company. "(SEAL)" was printed at the end of each of the prepared lines on the form and appears after the signature of Warfield. The instrument does not recite that it is under seal.

On February 11, 1985, BG & E brought suit on the guaranty for services rendered up through February 2, 1982. It moved for summary judgment. Warfield opposed the motion on the ground that the suit was not brought within three years after the cause of action accrued. The trial judge found that the guaranty was under seal and entered judgment for BG & E.

Warfield appealed to the Court of Special Appeals. We granted a writ of certiorari prior to decision in the intermediate appellate court.

Maryland Code (1973) § 5–102(a)(5), Courts and Judicial Proceedings Article, provides that the statute of limitations for contracts under seal is twelve years. The issue thus presented is whether this was a contract under seal.

The fact that BG & E placed the seal on the instrument did not make it any the less the seal of Warfield. *Line v. Line,* 119 Md. 403, 407, 86 A. 1032, 1034 (1913); *Keedy v. Moats,* 72 Md. 325, 330, 19 A. 965, 966 (1890).

In *General Petroleum Corp. v. Seaboard Terminals Corp.,* 23 F.Supp. 137 (D.Md.1938), Judge Chesnut said:

"1. If the contract is signed by an *individual* opposite and in obvious relation to a legally sufficient seal, the instrument will be taken as a sealed document, where there is nothing on the face of the paper to indicate the contrary even though there be no reference to the seal in the wording of the paper. 'A recital of the sealing or of

the delivery of a written promise is not essential to its validity as a sealed contract.' A.L.I. Restatement of the Law of Contracts, § 100. 'A promisor who delivers a written promise to which a seal has been previously affixed or impressed with apparent reference to his signature, thereby adopts the seal.' A.L.I. Restatement of Contracts, § 98(1). This has recently been held the law in this Circuit. *Federal Reserve Bank of Richmond v. Kalin,* 4 Cir., 81 F.2d 1003, 1006. The Maryland decisions are the same. *Trasher v. Everhart,* 3 Gill & J., Md., 234, 246; *Smith v. Woman's Medical College,* 110 Md. 441, 446, 72 A. 1107." 23 F.Supp. at 140.

Judge Digges quoted this language for the Court in *Federalsburg v. Allied Con.,* 275 Md. 151, 156, 338 A.2d 275, 279, *cert. denied,* 423 U.S. 1017, 96 S.Ct. 452, 46 L.Ed.2d 389 (1975). We also referred to this decision in *Gildenhorn v. Columbia R.E. Title,* 271 Md. 387, 317 A.2d 836 (1974), although we did not quote this exact language.

Judge Chesnut referred to Restatement of Contracts § 98(1) (1932), which states:

"A promisor who delivers a written promise to which a seal has been previously affixed or impressed with apparent reference to his signature, thereby adopts the seal."

It gives an illustration:

"1. A signs and delivers a promise to B, his signature being immediately in front of the word 'seal,' which has been previously printed or written there by another person. The contract is under seal."

Restatement (Second) of Contracts § 98 (1981), states:

"Unless extrinsic circumstances manifest a contrary intention, the delivery of a written promise by the promisor amounts to the adoption of any seal then on the document which has apparent reference to his signature or to the signature of another party to the document."

The same illustration is given with the addition of "[u]nless A manifests a contrary intention":

"1. A signs and delivers a written promise to B, his signature being immediately in front of the word 'seal,' which has been previously printed or written there by another person. Unless A manifests a contrary intention, he thereby adopts the seal and makes a contract under seal."

In this instance there has been no presentation of any evidence manifesting a contrary intention.

Judge Chesnut referred to *Federal Reserve Bank of Richmond v. Kalin*, 81 F.2d 1003 (4th Cir.1936). There the court said:

"Whether a mark or character shall be held to be a seal depends upon the intention of the executant, *'as shown by the paper.'* (Italics ours.) And, as the word 'seal' in parenthesis is in common use as a seal, its presence upon an instrument in the usual place of a seal, opposite the signature, undoubtedly evinces an intention to make the instrument a sealed instrument, which should be held conclusive by the court, in the absence of other indications to the contrary appearing on the face of the instrument itself." 81 F.2d at 1007.

In *Trasher v. Everhart*, 3 G. & J. 234 (1831), to which Judge Chesnut referred, the legend "(sl.)" appeared after each signature on a note. One attorney argued to our predecessors, "In this State, a scrawl, or a mark made with a pen, in the form of a seal, is *per se*, a seal, and that it is not necessary to be expressed in the body of the instrument, that it was the intention of the parties to give it the effect of a seal." His opponent contended, "There must be some expression in the body of the paper, showing that the party adopts it as his seal." The Court said:

"From the earliest period of our judicial history, a scrawl has been considered as a seal, and it would be too late at this day, and would be attended with consequences too serious, to permit it to be questioned. It is not necessary, as has been argued, that the scrawl must be adopted by the obligor, by a declaration in the body of the

bond, or single bill, to make it his seal. It is sufficient if the scrawl be affixed to the bond, or bill, at the time of its execution and delivery. For, if he execute and deliver it with the scrawl attached, it being considered here as equivalent to the wax or wafer, it is as much his seal, as if he had declared it to be so in the body of the instrument. The fact of the clause of attestation not appearing in the usual form of 'signed, sealed and delivered,' can, in reason, make no difference: for the question always is, is this the seal of the obligor? and if he has delivered it, with the scrawl attached, it is his seal, and must be so considered: for whether an instrument be a speciality, must always be determined by the fact, whether the party affixed a seal; not upon the assertion of the obligor, in the body of the instrument, or by the form of the attestation. In this case, the execution of the bill is admitted, and the plaintiff has possession of it which is evidence of delivery; and there is nothing to show that the scrawl was not attached, when it was executed and delivered, and the presumption always would be, that the seal was affixed to the instrument on its delivery, in the absence of evidence to the contrary." 3 G. & J. at 246–47.

This case was cited with approval by the Court in *Smith v. Woman's Medical College,* 110 Md. 441, 446, 72 A. 1107, 1109 (1909), although that was not the issue before the Court.

In *Wells v. Alropa Corporation,* 82 F.2d 887 (D.C.Cir. 1936), the court said:

"There is considerable conflict in the state decisions as to whether or not an instrument, such as the present, with the word seal printed thereon, and no reference on the face of the instrument signifying it was intended as a sealed instrument, is to be treated as such, or as merely a simple contract. In an early decision in the District of Columbia, *Green v. Lake,* 13 D.C. (2 Mackey) 162, where a printed seal appeared on the note at the end of the line containing the signature of the maker, as appears in the

present note, the court said: 'The question was suggested in the outset, whether this was to be treated as a sealed instrument or a simple contract. The action is brought in debt, which would apply to an instrument bearing either character. It is in evidence that by the law of Mississippi, where this contract was made, this is a sealed instrument, and we have no hesitation in saying that by the law of the District of Columbia it must also be so regarded. Written scrolls have been, from time immemorial, regarded as seals here. For twenty years we have been in the habit of using printed forms of conveyancing for real estate, with printed seals only, and to hold that these are not seals would be to upset many of the titles created during that time.'

"This holding is upon the theory that where a person signs his name next to the printed seal, he adopts the same as his seal, and this prevails whether or not in the body of the instrument are contained additional words 'Witness my hand and seal,' or 'Signed and sealed.' " 82 F.2d at 888.

It then proceeded to quote *Trasher,* 3 G. & J. at 246, where this Court said it was not necessary that the seal be adopted in the body of the instrument.

79 C.J.S. *Seals* § 3 c states:

"However, where the word 'Seal' or the letters 'L.S.,' or scrawls or scrolls may be employed instead of and have the same efficacy as a commonlaw seal, it is immaterial that such letters, word or scrawl is printed or placed on the instrument before it is executed, as the party, by signing his name in front of it, may adopt such printed device as his seal." *Id.* 110 Md. at 479, 72 A. 1107. (Footnotes omitted.)

See, also, 68 Am.Jur.2d *Seals* § 3 (1973).

Warfield relies upon *Caputo v. DiLoretto,* 110 Conn. 413, 148 A. 367 (1930); *Transbel Investment Co. v. Venetos,* 279 N.Y. 207, 18 N.E.2d 129 (1938); and *Matter of Pirie,* 198 N.Y. 209, 91 N.E. 587, *reh'g denied,* 199 N.Y. 524, 91 N.E.

1144 (1910). These cases hold that there must be some recognition in the instrument that it is under seal, a fact not present in this case. It will be noted, however, from our quotation of *Trasher*, 3 G. & J. 234, that this Court rejected such a theory in 1831.

We believe the law of Maryland is as set forth by Judge Chesnut in *General Petroleum Corporation*, 23 F.Supp. at 140. Hence, we hold that the trial court was correct in finding that the instrument in question was a contract under seal and that therefore the twelve-year statute of limitations was applicable.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.